AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
10/03/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY



**FILED**
CLERK, U.S. DISTRICT COURT
10/04/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ____KH____ DEPUTY

United States of America

v.

Joseph Raymon Nicholson,

Defendant

Case No. 8:24-mj-00483-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of September 2023 in the county of Orange in the Central District of California, the

defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of child pornography |
| 18 U.S.C. §2252A(a)(5)(B) | Possession of child pornography |
| 18 U.S.C. §2422(b) | Use of a facility of interstate commerce to induce a minor to engage in criminal sexual activity |

This criminal complaint is based on these facts:
*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Tory Torres, Special Agent HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        10/04/2024        /s/ Autumn D. Spaeth
*Judge's signature*

City and state:  Santa Ana, California        Hon. Autumn D. Spaeth, U.S. Magistrate Judge
*Printed name and title*

MR:bm

**AFFIDAVIT**

I, Tory Torres, being duly sworn, declare and state as follows:

## I.    INTRODUCTION

1.    I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), assigned to the Special Agent in Charge in Los Angeles, Office of the Assistant Special Agent in Charge, Orange County, California. I have been so employed since January 2019. As a part of my Special Agent training, I completed the Criminal Investigator Training Program and the HSI Special Agent Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, in August 2019. As part of my daily duties as an HSI SA, I investigate, among other things, offenses related to the sexual exploitation of children and child pornography in the Central District of California as part of the HSI Orange County Child Exploitation Task Force ("OCCETF"). HSI's OCCETF is responsible for enforcing federal criminal statutes that prohibit the sexual exploitation of children under 18 U.S.C. § 2251, et seq. I have received training regarding the investigation of child pornography and child exploitation offenses, and I am therefore familiar with numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including digital media. I have also participated in the execution of numerous search warrants, many of which were executed as part of investigations of child exploitation and child pornography offenses. Moreover, I am a federal law enforcement officer

engaged in enforcing criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and 2422 and I am authorized by law to request a search warrant.

2.    I make this affidavit in support of (i) a complaint charging Joseph Raymon NICHOLSON with production of child pornography in violation of Title 18, United States Code, Section 2251(a), and an application for a warrant for NICHOLSON's arrest; and (ii) an application for a warrant to search NICHOLSON's residence at 21022 Los Alisos Boulevard, Apartment 221, Rancho Santa Margarita, California 92688 (the "SUBJECT PREMISES"), as described more fully in Attachment A, for evidence, fruits, contraband, and instrumentalities, more fully described in Attachment B, of criminal violations of Title 18, United States Code, Sections 2251(a) (production of child pornography), 2252A(a)(2)(A) (distribution or receipt of child pornography), and 2252A(a)(5)(B) (possession of child pornography) (together, the "SUBJECT OFFENSES").

3.    The statements in this affidavit are based, in part, on information provided by witnesses and my investigation of this matter.  I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that (i) NICHOLSON has violated Title 18, United States Code, Section 2251(a) by producing child pornography; and (ii) evidence, fruits, and instrumentalities of the SUBJECT OFFENSES are presently located within the SUBJECT PREMISES.

4.   The statements contained in this affidavit are based upon my investigation, information provided by other sworn law enforcement officers and other personnel specially trained in the seizure and analysis of computers and electronic mobile devices and electronic storage devices, and on my experience and training as a federal agent.

5.   In summary, the following affidavit sets forth facts establishing that there is probable cause to believe that Joseph NICHOLSON produced, received, distributed, and/or possessed visual depictions of a minor engaged in sexually explicit conduct, via the Internet, while using an internet protocol (IP) address located at the SUBJECT PREMISES.

## II.   <u>STATEMENT OF PROBABLE CAUSE</u>

6.   In September 2023, the Homeland Security Investigations (HSI) Orange County Child Exploitation Taskforce (OCCETF) received Cybertip 172939825 from the National Center for Missing and Exploited Children (NCMEC). The Cybertip was from Discord Inc. and included a chat conversation between a suspected child and adult. The adult user reportedly coached the child on how to produce Child Sexual Abuse Material (CSAM), and the child sent those files to the adult.

7.   The identifiers for SUBJECT ACCOUNT 1, the suspected adult user, were as follows:

     a.   User ID: 1073720117764046908

     b.   Username: Urbanfox#9678

     c.   IP Address: 70.181.91.238 (Login) 02-21-2023 02:27:22 UTC

      d.   Phone: +14125776459

8.   The identifiers for SUBJECT ACCOUNT 2, the suspected child user, were as follows:

      a.   User ID: 868231540734320671

      b.   Username: Mushroom#0324

      c.   IP Address: 67.249.196.243 (Login) 02-24-2023 15:38:22 UTC

9.   In November 2023, a DHS summons was sent to Cox Communications for the IP address associated with SUBJECT ACCOUNT 1. The summons revealed the subscriber as Amy Jansen located at the SUBJECT PREMISES.

10.   In January 2024, SA Torres was informed of the Cybertip and summons return and recognized the name of the subscriber as the mother of Joseph NICHOLSON (DOB: 04/07/1998), who is the suspect in an HSI/State of Colorado case involving child exploitation offenses.

11.   Below is a summary of the HSI/ State of Colorado Case (Case Number : 2023CR1082):

      a.   In November 2020, the Mead Police Department ("MPD") in Mead, Colorado, initiated an investigation into a male suspect soliciting sexually explicit photographs from a minor female (the "Minor Victim") on several social media platforms. MPD completed a forensic interview of the Minor Victim and obtained several search warrants to the social media accounts which revealed sexually explicit conduct between the suspect and the Minor Victim. MPD determined that the suspect resided in Orange County, California, and an investigation lead

was sent to the HSI OCCETF.  HSI OCCETF was subsequently able to
identify the suspect as Joseph NICHOLSON, who resides in Rancho
Santa Margarita, California.

b.    On February 24, 2022, HSI OCCETF executed a
residential search warrant at NICHOLSON's address and seized
several electronic devices. A subsequent forensic search of a
Google cellular phone revealed that NICHOLSON was the user of
the Discord account in question and had messages from the Minor
Victim stored on the phone.

c.    Based on the location of the Minor Victim, the
case was accepted for prosecution from the Mead District
Attorney's office. On April 16, 2024, the OCCETF was provided
the Colorado State Case details as the following:

d.    People Of The State Of Colorado Vs. Nicholson,
Joseph Raymon - 2023CR1082

i.    Charge 1: Sexual Exploitation/child-
production Performance

ii.   Charge 2: Sexual Exploitation/child-
induce/entice

iii.  Charge 3: Internet Sex Exploitation Of A
Child

iv.   Charge 4: Internet Sex Exploitation Of A
Child

v.    Charge 5: Sexual Contact-coerce Child

vi.   Charge 6:  Sexual Contact-coerce Child

e.   NICHOLSON is currently out on bond and living at the SUBJECT PREMISES. NICHOLSON is set to appear for a preliminary hearing on November 15, 2024, in Greeley, Colorado.

12.   The phone number provided in the 2023 Cybertip was also the phone number linked to NICHOLSON's Discord account in the Colorado case. Based on this information, it was determined that NICHOLSON engaged in the current child exploitation offenses while he was being investigated for previous child exploitation offenses.

13.   In January 2024, the OCCETF contacted the New York State Police to help identify the Minor Victim based on the reported IP Address from the 2023 Cybertip.

14.   On February 5, 2024, Investigator Stephen Scaramuzzino and Investigator Joseph Lomonico of the New York State Police interviewed the Minor Victim ("MV"). The MV disclosed that she utilized SUBJECT ACCOUNT 2 and would regularly converse with SUBJECT ACCOUNT 1. The MV did recall sending SUBJECT ACCOUNT 1 images and videos. The MV disclosed that she was 14 years old when she was engaging with SUBJECT ACCOUNT 1 on Discord and remembered telling him how old she was at the time.

15.   Based on the interview with the MV, I was able to determine that the images and videos associated with the Cybertip were CSAM. Below are the descriptions of the CSAM files, which I have reviewed:

a.   File Name: 1073759105086402691.mp4

i.   MD5 Hash: b834c0de74618656294c98f2aaa4bd5a

ii.   Duration: 46 seconds

iii. Description: the video depicts a fully nude
minor female with short brown hair, sitting on the floor against
a bed with her legs spread open to expose her vagina and anus.
The minor female is masturbating and digitally penetrating her
vagina. The background has a green wall, a poster with the words
"My Hero Academia," and a shelf with various stuffed animals and
figurines. The bed has a pink comforter.

    b.   File Name: 1073757878005022730.mp4

       i.  MD5 Hash: 6441dc0d0efb92e696ea059780932035

       ii.  Duration: 31 seconds

       iii. Description: the video depicts a minor
female with short brown hair, wearing a black shirt pulled up
over her breasts, sitting on the floor against a bed with her
legs spread open to expose her vagina and anus. The minor female
is masturbating her vagina with her fingers. The background is
the same as the file above.

    c.   File Name: 1073756448988868668.jpeg

       i.  MD5 Hash: b18f70b08a217877b4e5a2c2b2c5ce99

       ii.  Description: the image depicts a minor
female with short brown hair, wearing a black shirt pulled up
over her breasts, sitting on the floor against a bed with her
legs spread open to expose her vagina and anus. The background
is the same as the file above.

16.  In May 2024, SA Torres reviewed the chat conversations
between SUBJECT ACCOUNT 1 and SUBJECT ACCOUNT 2 and determined
that NICHOLSON, after being informed that MV was 14 years old,
instructed her to create and send CSAM, offered to travel to her

to engage in sexual activity in person, and admitted to knowing his conduct was illegal.

17.  The MV sent the CSAM detailed above throughout their conversations.  On at least one occasion, NICHOLSON asked the MV to film herself engaging in sexually explicit conduct for him and then send him the video, and MV complied.  For example, before the MV sent NICHOLSON the first file described in paragraph 15 above, the MV had sent NICHOLSON a non-pornographic picture of herself.  NICHOLSON then responded, "Baby girl ur seriously perfect.  Take a video from this angle.  And slowly rub your pussy for me."  The MV then sent NICHOLSON the CSAM file described in paragraph 15(a) above.

18.  The full chats are presented in EXHIBIT 1.

19.  The Cybertip also detailed another Discord account with the User ID: 227795568695574530 ("SUBJECT ACCOUNT 3"), that NICHOLSON was confirmed to be operating as it used the same IP Address and phone number as SUBJECT ACCOUNT 1.

20.  On June 13, 2024, a search warrant for the above-mentioned Discord accounts was signed by the Honorable Autumn D. Spaeth in the Central District of California.

21.  A search of the Discord accounts revealed the following:

        a.  The chat conversation that was provided in the NCMEC Cybertip, between SUBJECT ACCOUNT 1 and SUBJECT ACCOUNT 2, was found in the saved data from the Discord return.

        b.  The CSAM photos attached to the NCMEC Cybertip, that were sent from SUBJECT ACCOUNT 2 (MINOR VICTIM) to SUBJECT

ACCOUNT 1 (NICHOLSON), were found in the Discord return for
SUBJECT ACCOUNT 2.

> c.   The IP Address provided by the NCMEC Cybertip for
SUBJECT ACCOUNT 1 and SUBJECT ACCOUNT 3 was consistent with the
IP Address from the Discord return and the DHS summons for the
address.

22.  On or about October 3, 2024, a DHS Summons to Skyview
Apartments indicated that the SUBJECT PREMISES is leased to Amy
Jansen (DOB 10/21/1972) and Joseph NICHOLSON (DOB 04/07/1998).
The lease application indicates that NICHOLSON has been living
at this address since 2020. The lease agreement ends in July
2025.

23.  On or about October 3, 2024, I conducted physical
surveillance at the SUBJECT PREMISES.  During this surveillance
I witnessed Amy JANSEN depart the residence with an adult male,
who I believe to be her boyfriend, Dave Ebbert (DOB 11/13/1971).
I also observed Jansen's registered vehicle parked outside of
the apartment.

### III. <u>DEFINITION OF TERMS</u>

24.  The following terms have the indicated meaning in this
affidavit:

> a.   The terms "minor," "sexually explicit conduct,"
"visual depiction," "producing," and "child pornography" are
defined as set forth in 18 U.S.C. § 2256 (but does not include
computer-generated images, per <u>Ashcroft v. Free Speech
Coalition</u>, 535 U.S. 234 (2002) (striking the prohibition on
computer-generated images in § 2256(8)(B) as overbroad)).

b.    The term "IP Address" is defined as a unique number assigned to each computer directly connected to the Internet (for example, 74.100.66.74).  Each computer connected to the Internet is assigned a unique IP address while it is connected.  The IP address for a user may be relatively static, meaning it is assigned to the same subscriber for long periods of time, or dynamic, meaning that the IP address is only assigned for the duration of that online session.

## IV.    TRAINING AND EXPERIENCE ON INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

25.    Based on my training and experience, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and possess multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

26.    Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children or from fantasies they may have from viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media, or from literature describing such activity.

27.    Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials in a variety of media, including photographs,

magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children often use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

28.  Individuals who have a sexual interest in children or images of children sometimes possess and maintain "hard copies" of child pornographic material – that is, pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc.  When they do, they generally possess these materials in the privacy and security of their home or some other secure location.  When individuals who have a sexual interest in children or images of children collect pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and/or videotapes, they often retain these materials for many years.

29.  Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, to

enable the individual to view the collection, which is valued highly.

30.  Individuals who have a sexual interest in children or images of children may correspond with and/or meet others to share information and materials; often retain correspondence as they do with their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact with and who share the same interests in child pornography.

31.  Individuals who have sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

### V.    TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

32.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

33.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

34.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

35.  The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain

software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

36.  Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

37.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

38.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

39.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file

size (300KB) Word documents, or 614 photos with an average size
of 1.5MB.

40.   The search warrant requests authorization to use the
biometric unlock features of a device, based on the following,
which I know from my training, experience, and review of
publicly available materials:

41.   Users may enable a biometric unlock function on some
digital devices.  To use this function, a user generally
displays a physical feature, such as a fingerprint, face, or
eye, and the device will automatically unlock if that physical
feature matches one the user has stored on the device.  To
unlock a device enabled with a fingerprint unlock function, a
user places one or more of the user's fingers on a device's
fingerprint scanner for approximately one second.  To unlock a
device enabled with a facial, retina, or iris recognition
function, the user holds the device in front of the user's face
with the user's eyes open for approximately one second.

42.   In some circumstances, a biometric unlock function
will not unlock a device even if enabled, such as when a device
has been restarted or inactive, has not been unlocked for a
certain period of time (often 48 hours or less), or after a
certain number of unsuccessful unlock attempts.  Thus, the
opportunity to use a biometric unlock function even on an
enabled device may exist for only a short time.  I do not know
the passcodes of the devices likely to be found in the search.

43.   Thus, the warrant I am applying for would permit law
enforcement personnel to, with respect to any device that

appears to have a biometric sensor and falls within the scope of the warrant: (1) depress Joseph NICHOLSON's thumb and/or fingers on the device(s); and (2) hold the device(s) in front of Joseph NICHOLSON's face with his eyes open to activate the facial-, iris-, and/or retina-recognition feature.

44.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VI.  <u>CONCLUSION</u>

45.   For all the reasons described above, there is probable cause to believe that (i) Joseph NICHOLSON has violated Title 18, United States Code, Section 2251(a) by producing child pornography; and (ii) the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of the SUBJECT OFFENSES will be found in a search of the SUBJECT PREMISES.

46.   It is further respectfully requested that this Court issue an Order sealing, until further order of Court, all papers submitted in support of this Application, including the Application, Affidavit, and the Search Warrant, and the requisite inventory notice (with the exception of one (1) copy of the warrant and inventory notice that will be left at the SUBJECT PREMISES).  Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation and premature disclosure of the contents of this Affidavit and related documents may have a negative impact of

this continuing investigation and may jeopardize its

effectiveness.


                                    _____/s/_____
                                    TORY TORRES, Special Agent
                                    HOMELAND SECURITY
                                    INVESTIGATIONS


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  4  day of
October, 2024.


_____/s/ Autumn D. Spaeth_____
HONORABLE AUTUMN D. SPAETH
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

The premises to be searched is the property located at 21022 Los Alisos Blvd Apt 221, Rancho Santa Margarita, CA, 92688 including any garages, outbuildings, and appurtenances on the property.  The residence is a single-family apartment located in the Skyview Apartments Community northeast of CA-241 and Los Alisos Boulevard. Apartment 221 is located on the second bock of apartments on the northwest corner and on the second floor. The apartment building is beige and tan in color. The numbers "221" are on a plaque next to the front door.

**ATTACHMENT B**

## VII. <u>ITEMS TO BE SEIZED</u>

1. The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 2251(a) (production of child pornography); 2252A(a)(5)(B) (possession of child pornography); and 2422(b) (use of a facility of interstate commerce to induce a minor to engage in criminal sexual activity), namely:

      a.    Child pornography, as defined in 18 U.S.C. § 2256(8), but not including computer-generated images.

      b.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that refer to child pornography, as defined in 18 U.S.C. § 2256(8), including documents that refer to the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, ordering, requesting, or trading of child pornography, or documents that refer to a transaction of any kind involving child pornography.

      c.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, tending to identify persons involved in the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, ordering, requesting, or trading of child pornography, or involved in a transaction of any kind involving child pornography, as defined in 18 U.S.C. § 2256(8).

d.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that identify any minor visually depicted while engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

e.    Any and all records, documents, programs, applications, materials, or items that are sexually arousing to individuals who are interested in minors, but that are not in and of themselves obscene or that do not necessarily depict minors involved in sexually explicit conduct.  Such material is commonly known as "child erotica" and includes written materials dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, missing children, investigative techniques relating to child exploitation, sexual disorders, pedophilia, nudist publications, diaries, and fantasy writings.

f.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that pertain to peer-to-peer file-sharing software.

g.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that pertain to accounts with any Internet Service Provider.

h.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, regarding ownership and/or possession of 891 Darrell St., Costa Mesa, CA 92627 (the "SUBJECT PREMISES").

i.   Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

j.   With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.   evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and

iv

manuals, that may be necessary to access the device or to conduct a forensic examination of it;

              viii. records of or information about Internet Protocol addresses used by the device;

              ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    2.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

    3.  As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to

store digital data (excluding analog tapes such as VHS); and
security devices.

VIII.      **SEARCH PROCEDURE FOR DIGITAL DEVICES**

4.   In searching digital devices or forensic copies
thereof, law enforcement personnel executing this search warrant
will employ the following procedure:

a.   Law enforcement personnel or other individuals
assisting law enforcement personnel (the "search team") will, in
their discretion, either search the digital device(s) on-site or
seize and transport the device(s) and/or forensic image(s)
thereof to an appropriate law enforcement laboratory or similar
facility to be searched at that location.  The search team shall
complete the search as soon as is practicable but not to exceed
120 days from the date of execution of the warrant.  The
government will not search the digital device(s) and/or forensic
image(s) thereof beyond this 120-day period without obtaining an
extension of time order from the Court.

b.   The search team will conduct the search only by
using search protocols specifically chosen to identify only the
specific items to be seized under this warrant.

i.   The search team may subject all of the data
contained in each digital device capable of containing any of
the items to be seized to the search protocols to determine
whether the device and any data thereon falls within the list of
items to be seized.  The search team may also search for and
attempt to recover deleted, "hidden," or encrypted data to

determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

       ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

       iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques, including to search for known images of child pornography.

       c.  If the search team, while searching a digital device, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that device pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

       d.  If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

       e.  If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

f.    If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

g.    The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

h.    After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.    The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6.    In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a.    Any digital device capable of being used to commit, further, or store evidence of the offenses listed above;

b.    Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.    Any magnetic, electronic, or optical storage device capable of storing digital data;

d.    Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e.    Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.    Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.    Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

7.    During the execution of this search warrant, law enforcement is permitted to: (1) depress Joseph NICHOLSON's thumb and/or fingers onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2)

hold the device in front of Joseph NICHOLSON's face with his eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

8.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

x

**EXHIBIT 1**

1.  Discord Chat Detailing CSAM Exchange

| DISCORD ACCOUNT | DATE/TIME | MESSAGE |
|---|---|---|
| Urbanfox#9678 | 2023-02-10 23:49:22 | I really want u babe |
| Mushroom#0324 | 2023-02-10 23:49:36 | Ik I'm sorry |
| Mushroom#0324 | 2023-02-10 23:49:42 | I promise I'm trying |
| Urbanfox#9678 | 2023-02-10 23:50:53 | Baby girl r u able to prop ur phone against the wall on the ground |
| Urbanfox#9678 | 2023-02-10 23:50:55 | And sit in front of it |
| Mushroom#0324 | 2023-02-10 23:51:16 | Yea? |
| Urbanfox#9678 | 2023-02-10 23:53:49 | Do that for me |
| Urbanfox#9678 | 2023-02-10 23:53:56 | Actually |
| Urbanfox#9678 | 2023-02-10 23:53:58 | Sit on ur knees |
| Urbanfox#9678 | 2023-02-10 23:54:06 | And show me |
| Mushroom#0324 | 2023-02-10 23:57:09 | Wait on my knees or in the w position? |
| Urbanfox#9678 | 2023-02-10 23:57:22 | Knees |
| Urbanfox#9678 | 2023-02-10 23:57:24 | Please |
| Urbanfox#9678 | 2023-02-10 23:57:29 | Wait |
| Urbanfox#9678 | 2023-02-10 23:57:32 | What's the w position |
| Urbanfox#9678 | 2023-02-10 23:57:43 | Did u already take a pic? |
| Urbanfox#9678 | 2023-02-10 23:57:45 | Show me what u took |
| Mushroom#0324 | 2023-02-10 23:57:46 | Nu |
| Urbanfox#9678 | 2023-02-10 23:57:51 | Oh ok |
| Urbanfox#9678 | 2023-02-10 23:57:57 | Here do this |
| Urbanfox#9678 | 2023-02-10 23:57:59 | One on ur knees |
| Urbanfox#9678 | 2023-02-10 23:58:08 | And then do one with ur legs up |
| Urbanfox#9678 | 2023-02-10 23:58:11 | And spread them wide |
| Urbanfox#9678 | 2023-02-10 23:58:19 | But like hold down ur shirt over ur pussy like ur hiding it |
| Mushroom#0324 | 2023-02-10 23:58:19 | Oki |
| Urbanfox#9678 | 2023-02-11 00:01:21 | You take them babe? |
| Mushroom#0324 | 2023-02-11 00:01:35 | Mhm |
| Mushroom#0324 | 2023-02-11 00:01:46 | Image sent from Victim to Suspect (not included by Discord) |
| Urbanfox#9678 | 2023-02-11 00:01:56 | Omg |

| Mushroom#0324 | 2023-02-11 00:01:56 | Sorry if it's hard to see |
|---|---|---|
| Urbanfox#9678 | 2023-02-11 00:02:01 | Do y have panties on? |
| Urbanfox#9678 | 2023-02-11 00:02:03 | *u |
| Mushroom#0324 | 2023-02-11 00:02:14 | Yeah |
| Urbanfox#9678 | 2023-02-11 00:02:22 | Baby girl I love how sexy u r |
| Urbanfox#9678 | 2023-02-11 00:02:47 | Do the first one again but this time without your shirt on |
| Urbanfox#9678 | 2023-02-11 00:02:51 | But leave your panties on |
| Urbanfox#9678 | 2023-02-11 00:02:56 | And pull them up really tight |
| Urbanfox#9678 | 2023-02-11 00:03:07 | Like basically give yourself a wedgie with ur underwear |
| Mushroom#0324 | 2023-02-11 00:04:42 | Hehe bby I took another one for u |
| **Mushroom#0324** | **2023-02-11 00:04:46** | **CSAM sent from Victim to Suspect**<br><br>**(File: 1073756448988868668.jpeg)** |
| Urbanfox#9678 | 2023-02-11 00:04:50 | Omfg |
| Urbanfox#9678 | 2023-02-11 00:05:01 | Baby girl |
| Mushroom#0324 | 2023-02-11 00:05:08 | Hii |
| Urbanfox#9678 | 2023-02-11 00:05:09 | I want to stuff that little cunt |
| Urbanfox#9678 | 2023-02-11 00:05:21 | God I love ur body baby girl |
| Urbanfox#9678 | 2023-02-11 00:05:25 | I want to massage u |
| Urbanfox#9678 | 2023-02-11 00:05:34 | I want to rub and feel ur body so much |
| Urbanfox#9678 | 2023-02-11 00:05:47 | Look at those beautiful legs omg |
| Urbanfox#9678 | 2023-02-11 00:05:54 | I'm gonna lay in between them |
| Urbanfox#9678 | 2023-02-11 00:06:01 | And I'm gonna kiss ur thighs baby girl |
| Urbanfox#9678 | 2023-02-11 00:06:09 | And lick ur pussy |
| Urbanfox#9678 | 2023-02-11 00:06:10 | Thank youuuu |
| Urbanfox#9678 | 2023-02-11 00:06:27 | Baby girl ur seriously perfect |
| Urbanfox#9678 | 2023-02-11 00:06:34 | Take a video from this angle |
| Urbanfox#9678 | 2023-02-11 00:06:43 | And slowly rub your pussy for me |
| Mushroom#0324 | 2023-02-11 00:07:02 | Okii |
| Urbanfox#9678 | 2023-02-11 00:08:11 | Baby girl I have one little rule for you ok? |
| Urbanfox#9678 | 2023-02-11 00:08:23 | Only take nudes with your face in it for me, and no one else ok? |
| Mushroom#0324 | 2023-02-11 00:09:21 | But what about my bf? |
| Urbanfox#9678 | 2023-02-11 00:09:35 | Do you already take nudes with ur face in it |

| | | for him? |
|---|---|---|
| Mushroom#0324 | 2023-02-11 00:09:40 | Mhm |
| Urbanfox#9678 | 2023-02-11 00:09:49 | Ok him too then |
| Urbanfox#9678 | 2023-02-11 00:09:53 | Just always be careful babe |
| Urbanfox#9678 | 2023-02-11 00:09:59 | Don't do it for anyone else |
| Mushroom#0324 | 2023-02-11 00:10:11 | Okii |
| Urbanfox#9678 | 2023-02-11 00:10:13 | Did u take that video sweetie? |
| Mushroom#0324 | 2023-02-11 00:10:17 | Mhn |
| **Mushroom#0324** | **2023-02-11 00:10:27** | **CSAM sent from Victim to Suspect**<br><br>**(File: 1073757878005022730.mp4)** |
| Urbanfox#9678 | 2023-02-11 00:11:08 | God it should be illegal to be this adorable and sexy |
| Urbanfox#9678 | 2023-02-11 00:11:18 | Baby girl take ur shirt off |
| Urbanfox#9678 | 2023-02-11 00:11:28 | And I want you to take a longer video of u rubbing |
| Urbanfox#9678 | 2023-02-11 00:11:35 | And slowly go faster |
| Mushroom#0324 | 2023-02-11 00:11:50 | Okii |
| **Mushroom#0324** | **2023-02-11 00:15:20** | **CSAM sent from Victim to Suspect**<br><br>**(File: 1073759105086402691.mp4)** |
| Urbanfox#9678 | 2023-02-11 00:16:00 | Omg |
| Urbanfox#9678 | 2023-02-11 00:16:02 | Baby girl |
| Urbanfox#9678 | 2023-02-11 00:16:09 | My cock needs to be inside of u |
| Urbanfox#9678 | 2023-02-11 00:16:13 | Take another video |
| Urbanfox#9678 | 2023-02-11 00:16:18 | And I want you to finger yourself |
| Urbanfox#9678 | 2023-02-11 00:16:28 | And I want u to speed up as the video goes |
| Urbanfox#9678 | 2023-02-11 00:16:36 | All the way to the point ur going really fast |
| Mushroom#0324 | 2023-02-11 00:17:00 | Do I gotta? Is extremely cold and am shivering |
| Mushroom#0324 | 2023-02-11 00:17:02 | I'm sorry |
| Urbanfox#9678 | 2023-02-11 00:17:23 | Put a blanket around yourself |
| Urbanfox#9678 | 2023-02-11 00:17:27 | Can you do that |
| Urbanfox#9678 | 2023-02-11 00:17:30 | And take the video |
| Urbanfox#9678 | 2023-02-11 00:17:33 | Does that work babe? |
| Urbanfox#9678 | 2023-02-11 00:18:16 | Baby girl |
| Urbanfox#9678 | 2023-02-11 00:18:32 | I want to wrap a blanket around u and me and |

| | | I want u on my cock |
|---|---|---|
| Urbanfox#9678 | 2023-02-11 00:18:53 | Imagine my steaming cock slowly sliding in ur little pussy |
| Urbanfox#9678 | 2023-02-11 00:18:56 | It would warm u right up |
| Urbanfox#9678 | 2023-02-11 00:19:28 | Do you want daddy's warm cock? |
| Urbanfox#9678 | 2023-02-11 00:21:12 | Baby girl? You ok? |
| Urbanfox#9678 | 2023-02-11 00:24:50 | Sweetie talk please |
| Urbanfox#9678 | 2023-02-11 00:29:42 | We don't have to do anything |
| Mushroom#0324 | 2023-02-11 00:33:42 | I'm sorry I was talking with my brother |

2.  Discord Chat Confirming Suspect's Knowledge of Victim's Age

| DISCORD ACCOUNT | DATE/TIME | MESSAGE |
|---|---|---|
| Urbanfox#9678 | 2023-02-11 00:44:49 | Baby girl if u lived with me would u just let me use u anyway I pleased? |
| Mushroom#0324 | 2023-02-11 00:45:09 | Ofc :3 |
| Urbanfox#9678 | 2023-02-11 00:45:28 | What grade r u in sweetie |
| Mushroom#0324 | 2023-02-11 00:45:39 | 8th |
| Mushroom#0324 | 2023-02-11 00:45:43 | Why? |
| Urbanfox#9678 | 2023-02-11 00:45:49 | Ur 15 right |
| Urbanfox#9678 | 2023-02-11 00:46:02 | Did u get held back a year at some point? |
| Urbanfox#9678 | 2023-02-11 00:46:19 | Or did u start school late or something |
| Urbanfox#9678 | 2023-02-11 00:46:33 | Or r u younger than 15? |
| Urbanfox#9678 | 2023-02-11 00:47:25 | Baby girl? |
| Mushroom#0324 | 2023-02-11 00:47:48 | Well I'm 14 but I'll be 15 soon |
| Urbanfox#9678 | 2023-02-11 00:47:54 | Ooo |
| Urbanfox#9678 | 2023-02-11 00:48:17 | Damn still so long till ur 18 |
| Urbanfox#9678 | 2023-02-11 00:48:34 | I really hope we're still talking by then |

3.  Discord Chat of Suspect Offering to Travel to Victim to Engage in Sexual Conduct

| DISCORD ACCOUNT | DATE/TIME | MESSAGE |
|---|---|---|
| Urbanfox#9678 | 2023-02-11 19:30:31 | Would u want to meet up one day baby girl |
| Mushroom#0324 | 2023-02-11 19:36:13 | Hehe yis |
| Urbanfox#9678 | 2023-02-11 19:36:49 | You want daddy to do naughty things to u? |

| | | |
|---|---|---|
| Mushroom#0324 | 2023-02-11 19:37:29 | When we meet up yis |
| Urbanfox#9678 | 2023-02-11 19:42:36 | Would u want to meet up anytime |
| Urbanfox#9678 | 2023-02-11 19:42:49 | Or would u want to wait till ur a certain age |
| Mushroom#0324 | 2023-02-11 19:42:58 | When I'm older sure |
| Urbanfox#9678 | 2023-02-11 19:49:44 | Not now? |
| Urbanfox#9678 | 2023-02-11 19:49:49 | What I flew to u |
| Urbanfox#9678 | 2023-02-11 19:50:01 | And we meet up and I fuck that little cunt |
| Mushroom#0324 | 2023-02-11 19:50:40 | You could but my parents wouldn't let you see me |
| Urbanfox#9678 | 2023-02-11 19:50:54 | They wouldn't know |
| Urbanfox#9678 | 2023-02-11 19:51:01 | U could say ur hanging with friends or something |
| Mushroom#0324 | 2023-02-11 19:51:28 | I'm not allowed to go out alone |
| Urbanfox#9678 | 2023-02-11 19:51:37 | Ohh |
| Mushroom#0324 | 2023-02-11 19:51:40 | Unless we went in the woods by my house |
| Urbanfox#9678 | 2023-02-11 19:51:48 | Wait how were u meeting up with that one friend? |
| Urbanfox#9678 | 2023-02-11 19:51:55 | The one that was doing stuff |
| Mushroom#0324 | 2023-02-11 19:52:07 | He came over |
| Urbanfox#9678 | 2023-02-11 19:52:19 | He was using u at ur house? |
| Mushroom#0324 | 2023-02-11 19:52:34 | And we had a class together that was just us and the teacher left a lot |
| Mushroom#0324 | 2023-02-11 19:52:45 | In the woods |

4.    Discord Chat of Suspect Admitting to Engaging in Illegal Conduct

| DISCORD ACCOUNT | DATE/TIME | MESSAGE |
|---|---|---|
| Urbanfox#9678 | 2023-02-12 03:02:40 | Baby girl do u like doing stuff with ur dog btw |
| Urbanfox#9678 | 2023-02-12 03:02:45 | Or do u only do that for me |
| Mushroom#0324 | 2023-02-12 03:02:56 | Not really |
| Urbanfox#9678 | 2023-02-12 03:03:11 | It does feel good though right? |
| Mushroom#0324 | 2023-02-12 03:03:11 | I feel bad for her bc ik she doesn't wanna |
| Urbanfox#9678 | 2023-02-12 03:03:17 | I mean |
| Urbanfox#9678 | 2023-02-12 03:03:22 | She does |
| Urbanfox#9678 | 2023-02-12 03:03:26 | U weren't forcing her |

| Mushroom#0324 | 2023-02-12 03:03:26 | Yeah but it hurts kinda |
|---|---|---|
| Urbanfox#9678 | 2023-02-12 03:03:41 | U weren't putting anything on ur pussy either were u? |
| Urbanfox#9678 | 2023-02-12 03:04:06 | And tbh baby I kind think thats hot that it hurts but makes u cum too |
| Mushroom#0324 | 2023-02-12 03:04:14 | Her tongue is rough and she kinda bites |
| Urbanfox#9678 | 2023-02-12 03:04:14 | I loved that ur pussy got so swollen |
| Urbanfox#9678 | 2023-02-12 03:04:22 | Fuck baby |
| Urbanfox#9678 | 2023-02-12 03:04:53 | Do u think another dog would feel better |
| Mushroom#0324 | 2023-02-12 03:05:28 | Idk but is kinda weird bc boo is the only one who stays in my room |
| Urbanfox#9678 | 2023-02-12 03:05:34 | Who's boo |
| Urbanfox#9678 | 2023-02-12 03:05:43 | Oh the one that was licking |
| Urbanfox#9678 | 2023-02-12 03:05:45 | ? |
| Mushroom#0324 | 2023-02-12 03:05:47 | Mhm |
| Urbanfox#9678 | 2023-02-12 03:05:58 | Does she stay in ur room even when she's not licking |
| Urbanfox#9678 | 2023-02-12 03:06:41 | ? |
| Mushroom#0324 | 2023-02-12 03:06:48 | Boo is the one who did it, elli is the one with a mohawk and grim is white |
| Mushroom#0324 | 2023-02-12 03:06:52 | Yeah |
| Mushroom#0324 | 2023-02-12 03:07:04 | Sorry I'll brb I gotta help mom |
| Urbanfox#9678 | 2023-02-12 03:07:07 | I think she likes the taste of ur pussy tbh |
| Urbanfox#9678 | 2023-02-12 03:07:08 | And ok |
| Mushroom#0324 | 2023-02-12 03:07:25 | Hopefully you will too :3 |
| Urbanfox#9678 | 2023-02-12 03:07:30 | I definitely will |
| Mushroom#0324 | 2023-02-12 03:10:41 | Hii |
| Mushroom#0324 | 2023-02-12 03:10:44 | I love you |
| Urbanfox#9678 | 2023-02-12 03:10:51 | I love you too |
| Urbanfox#9678 | 2023-02-12 03:11:13 | Don't feel too bad though baby ur technically not forcing her to lick y |
| Urbanfox#9678 | 2023-02-12 03:11:14 | U |
| Urbanfox#9678 | 2023-02-12 03:11:25 | Like if u were putting stuff on ur pussy that's another thing |
| Urbanfox#9678 | 2023-02-12 03:11:40 | But I mean she likes the taste it's just were using that to also get u off |
| Urbanfox#9678 | 2023-02-12 03:11:43 | But don't feel bad |

| Mushroom#0324 | 2023-02-12 03:11:55 | Hmph |
| Urbanfox#9678 | 2023-02-12 03:12:04 | I'm just trying to make u feel better baby |
| Mushroom#0324 | 2023-02-12 03:12:17 | Is also illgale lol |
| Mushroom#0324 | 2023-02-12 03:12:23 | Iligel |
| Mushroom#0324 | 2023-02-12 03:12:32 | Not legal |
| Urbanfox#9678 | 2023-02-12 03:12:36 | Well so is me doing naughty things to u |
| Urbanfox#9678 | 2023-02-12 03:12:37 | Lol |
| Urbanfox#9678 | 2023-02-12 03:12:40 | But we still do thst |
| Mushroom#0324 | 2023-02-12 03:12:40 | Ik im sorry |
| Urbanfox#9678 | 2023-02-12 03:12:47 | It's ok baby |
| Urbanfox#9678 | 2023-02-12 03:12:51 | Just don't feel bad |
| Mushroom#0324 | 2023-02-12 03:12:54 | Well we haven't actually done itt |
| Mushroom#0324 | 2023-02-12 03:12:58 | Oki |
| Urbanfox#9678 | 2023-02-12 03:13:05 | Well this online stuff is illegal too |
| Urbanfox#9678 | 2023-02-12 03:13:06 | But idc |
| Urbanfox#9678 | 2023-02-12 03:13:08 | I love u |
| Mushroom#0324 | 2023-02-12 03:13:15 | I love you too |
| Urbanfox#9678 | 2023-02-12 03:13:23 | My cock is craving u |

5.    Discord Chat of Suspect Asking for CSAM After
      Acknowledging Victim's Age and Illegal Conduct

| DISCORD ACCOUNT | DATE/TIME | MESSAGE |
|---|---|---|
| Urbanfox#9678 | 2023-02-13 21:43:53 | Baby girl take a picture of you in doggy for me |
| Urbanfox#9678 | 2023-02-13 21:43:59 | Get on the floor rq |
| Urbanfox#9678 | 2023-02-13 21:44:04 | And prop ur phone against the wall |
| Urbanfox#9678 | 2023-02-13 21:44:11 | And show me u in doggy from the back |
| Mushroom#0324 | 2023-02-13 21:44:26 | Hehe you wanna see my ass? |
| Urbanfox#9678 | 2023-02-13 21:44:31 | Mhm |
| Urbanfox#9678 | 2023-02-13 21:44:39 | Take 2 pics actually |
| Urbanfox#9678 | 2023-02-13 21:44:42 | One with ur legs closed |
| Urbanfox#9678 | 2023-02-13 21:44:46 | And one with them open please |
| Mushroom#0324 | 2023-02-13 21:44:54 | Okii |
| Urbanfox#9678 | 2023-02-13 21:44:58 | Make sure you stick that ass out for daddy |
| Urbanfox#9678 | 2023-02-13 21:45:01 | Arch ur back baby girl |

| Mushroom#0324 | 2023-02-13 21:47:41 | That was hard to take lol |
| Urbanfox#9678 | 2023-02-13 21:47:45 | Omg baby |
| Urbanfox#9678 | 2023-02-13 21:47:50 | I want to be right there |
| Urbanfox#9678 | 2023-02-13 21:47:51 | So badly |
| Urbanfox#9678 | 2023-02-13 21:48:03 | I want my cock so deep inside u rn |
| Urbanfox#9678 | 2023-02-13 21:48:19 | And I want to grab ur hips and fuck ur pussy till u cum |
| Urbanfox#9678 | 2023-02-13 21:48:40 | Omg I need it |
| Mushroom#0324 | 2023-02-13 21:48:50 | Pleaseeee |
| Urbanfox#9678 | 2023-02-13 21:48:52 | Get back on ur bed |
| Mushroom#0324 | 2023-02-13 21:48:53 | Daddyy |
| Urbanfox#9678 | 2023-02-13 21:48:57 | And strip naked |
| Mushroom#0324 | 2023-02-13 21:49:00 | Can I please cum? |
| Mushroom#0324 | 2023-02-13 21:49:06 | Im already there |
| Urbanfox#9678 | 2023-02-13 21:49:18 | Take a video of you cumming baby girl |
| Urbanfox#9678 | 2023-02-13 21:49:22 | And yes I give you permission |
| Urbanfox#9678 | 2023-02-13 21:49:27 | But let me see |
| Urbanfox#9678 | 2023-02-13 21:49:36 | Leave sound on please |